UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MICHAEL LaBONTE,           )
                           )
      Plaintiff          )
                           )
v.                         )        Civil No. 09-358-P-S
                           )
MICHAEL J. ASTRUE,         )
Commissioner of Social Security, )
                           )
      Defendant          )

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the questions of whether the administrative law judge was required to find an additional severe impairment at Step 2 of the sequential evaluation process and whether the decision at Step 5 is supported by substantial evidence. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff was insured for SSD benefits only through September 30, 2005, Finding 1, Record at 11; that he suffered from disorders of the right shoulder, degenerative disc disease of the lumbar spine, and asthma, impairments that were severe but which did not, considered separately or together, meet or

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on April 2, 2010, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

medically equal the criteria of any of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id.* at 11-13; that he had the residual functional capacity to perform a range of light work, diminished by occasional overhead reaching with the right shoulder and the need to avoid asthmatic triggers such as concentrated exposure to dust, fumes, gases, and pulmonary irritants, Finding 5, *id.* at 13; that he was unable to perform his past relevant work, Finding 6, *id.* at 16; that, given his age (43 years at the alleged onset date), at least high school education, work experience, and residual functional capacity, use of the Medical-Vocational Rules in Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid"), as a framework for decision-making led to a finding that there were jobs in significant numbers in the national economy that the plaintiff could perform, Findings 7-10, *id.*; and that the plaintiff accordingly had not been under a disability, as that term is defined in the Social Security Act, at any time from January 1, 2003, the alleged onset date, through the date of the decision, Finding 11, *id.* at 17.  The Appeals Council declined to review the decision, *id.* at 1-2, making it the final determination of the commissioner, 20 C.F.R. § 404.981, *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review herein is whether the commissioner's determination is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform

work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's appeal also implicates Step 2 of the sequential-evaluation process. The claimant bears the burden of proof at Step 2, although it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

### Discussion

#### 1. Cervical Spine Impairment

The plaintiff contends that the administrative law judge should have found a cervical spine impairment as an additional severe impairment at Step 2. Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 10) at 2-4. At Step 2, only medical evidence may be used to support a finding that an impairment is severe. 20 C.F.R. § 404.1528(a); Social Security Ruling 85-28, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 394; *see also Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).

The plaintiff points to the following evidence:

- November 2004 x-rays of the cervical spine of which Dr. Endrizzi said: "there may be some underlying mild cervical spine pathology causing some trapezius pain" and

- June 2007 x-rays which revealed mild spondylotic changes at C5-6 with some straightening of the cervical curve which "has developed in the interim since the study performed nearly 4 years earlier" and "apparent ossific densities between the inferior surface of the clavicle and the coracoids process"

Itemized Statement at 3-4.

But, the plaintiff offers no evidence of the severity of these "mild" changes or pathology. He offers the unremarkable assertion that description of a medical condition as "mild" does not necessarily mean that the impairment caused thereby is only "mild," *id.* at 3, but, beyond that, he appears to expect the court to do what he would argue, presumably, that the administrative law judge may not do – draw a conclusion based on raw medical evidence. The plaintiff proffers, *id.* at 4, another basic principle of Social Security law – an administrative law judge may not ignore evidence that is inconsistent with his or her opinion – but how is the court to know in this instance that the two x-rays at issue are inconsistent with the administrative law judge's opinion? It is the plaintiff's burden to show that an impairment, if indeed the x-rays at issue demonstrate the existence of an impairment, was severe before the date last insured. *Desjardins v. Astrue*, Civil No. 09-2-B-W, 2009 WL 3152808 (D. Me. Sept. 28, 2009), at *4. That is, he must show that the cervical spine "impairment" significantly limited his ability to do basic work activity at the relevant time. 20 C.F.R. § 404.1520(c); *Bowen v. Yuckert*, 482 U.S. 137, 145-46 (1987).

In addition, in this district, assuming that an error has been made at Step 2 in failing to find a particular impairment to be severe, that error is uniformly considered harmless, unless the

4

plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim. *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280 (D. Me. Jan. 19, 2010), at *4 n.3 (and cases cited therein). The plaintiff has made no attempt to do so in this case.[2]

The plaintiff is not entitled to remand on this basis.

## 2. *Jobs Identified by the Vocational Expert*

The plaintiff contends that the jobs which the vocational expert testified were available to him and upon which the administrative law judge relied, Record at 17 & 46-47, were in fact not available because they all require "at least frequent reaching and handling, activities that are inconsistent with Plaintiff's functional limitations." Itemized Statement at 5. He recites the evidence that he believes demonstrates his "manipulative limitations" and asserts that "there is no correspondence between the ALJ's RFC [Residual Functional Capacity] and the testimony of the VE [Vocational Expert]" because "the ALJ's RFC was not as limiting as that found by the DDS reviewers." *Id.* at 6, 7.

As the plaintiff notes, *id*. at 6, the administrative law judge found that the plaintiff was limited to occasional overhead reaching with the right shoulder, but found no other reaching, handling, or manipulative limitations. Record at 13. The plaintiff seems to contend that the administrative law judge was required to adopt the limitations on reaching and handling found by the state-agency reviewers, although he does not challenge the administrative law judge's assigned residual functional capacity directly on this point. Such a challenge would occur at

---

[2] When asked this question at oral argument, counsel for the plaintiff asserted that finding a severe cervical impairment at Step 2 would "raise issues of the other shoulder," because Dr. Endrizzi "said that there were problems in the trapezius muscles," which means that there is potentially a problem in the left shoulder that could "potentially be significant at the other steps." I assume this is a reference to the consultative evaluation of the plaintiff performed by Donald P. Endrizzi, M.D. on November 9, 2004, that appears at pages 251-52 of the record. Dr. Endrizzi does mention that "[a] Spurling's maneuver did . . . reproduce some pain into the trapezius area[,]" *id*. at 251, and "some trapezius pain [that] could be secondary to the AC separation [in the right shoulder] . . .[or] to some cervical spine disease." *Id*. at 252. There is no mention of the left shoulder at all in the report, however. In order to make the nexus between this pain and some impairment to the left shoulder, some medical evidence is required. The speculation of counsel for the plaintiff, based on raw medical evidence, falls far short of the necessary showing.

Step 4 of the sequential review process, which the plaintiff does not make. The fact that the administrative law judge did not adopt all of the limitations included in one or more state-agency reviews does not make his reliance on the testimony of the vocational expert reversible error.

At oral argument, counsel for the plaintiff discussed the Physical Residual Functional Capacity Assessment form used by all state-agency medical reviewers and the box that appears under the heading "Manipulative Limitations" and provides two options for checking: "limited" and "unlimited." Record at 320. Specifically, in the line marked "Reaching all directions (including overhead)," the reviewing physician, Dr. Smith, has checked the "limited" box on this line. *Id*. The fifth line of this subsection instructs the reviewer to "[d]escribe how the activities checked 'limited' are impaired. Also, explain how and why the evidence supports your conclusions in item 1 through 4. Cite the specific facts upon which your conclusions are based." *Id*. In the following space, Dr. Smith wrote: " Limited to occasional reaching above the R [right] shoulder only due to A-C [acromioclavicular] separation." *Id.*

Counsel for the plaintiff contended that the check in the "limited" box on the "reaching in all directions" line, the only mention in the entire form of any limitations on reaching, may only be interpreted as a finding that limitations of unspecified severity exist in reaching in all directions, and the specific handwritten notation by Dr. Smith about reaching overhead above the right should could only be interpreted as a more specific limitation on reaching in that specific direction, in addition to the limitations in reaching in all directions. Counsel maintained that the handwritten note could not be interpreted as a  modification of the printed limitation and that the only way to record a limitation limited to reaching above the right shoulder would be *not* to check the box and to write in the actual limitation in the space following the "Manipulative

Limitations" entries. He maintained that this court had so treated this section of the form in *Quimby v. Astrue*, No. 07-128-B-W, 2008 WL 660180 (D. Me. Mar. 5, 2008).

That assertion is not correct. While it is true that Judge Cohen in that case referred to the same section of the same form that was filled out by a state-agency reviewing physician who checked the "limited" box on the "reaching in all directions" line and added "[n]o frequent overhead work," *id.* at *3, that observation was made in the context of a failure by the administrative law judge to mention at all the plaintiff's shoulder condition, diagnosed as bilateral shoulder enthesopathy, and the failure of another state-agency reviewer to assign any limitation on reaching, *id*. In the case at hand, there is no medical evidence of any limitation on reaching with the left extremity at all, and the handwritten note clearly is intended to limit the reaching restriction to "only" reaching above right shoulder. Record at 320. To interpret the form as the plaintiff advocates would create ongoing difficulties for agency medical reviewers, who would be given no alternative to find any reaching limitations less expansive than in "all directions" without any indication of the severity of that limitation, and for administrative law judges, who would frequently be faced with an apparent finding of limitations on reaching in all directions with no indication of the degree of such limitations and whether they varied for different extremities. My reading of the form in this case is underscored by the fact that there is no medical evidence in the record to support a limitation in reaching with the left extremity whatsoever, and with the right extremity in any direction other than overhead.

Finally, the jobs to which the vocational expert testified and on which the administrative law judge relied, ticket seller, and attendant positions in movie theaters, storage facilities, and cafeterias, Record at 17, 48, are consistent with the limitations included in the plaintiff's residual

7

functional capacity by the administrative law judge[3] in his opinion and in his hypothetical question to the vocational expert at the hearing, *id*. at 13, 45, and that is all that is required.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 18th day of May, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[3] Specifically, the one job identified by number by the vocational expert does require "Reaching: Constantly" but there is no indication that this reaching would likely be overhead and on the right. Ticket Seller, § 211.467-030, *Dictionary of Occupational Titles* (U.S. Dep't of Labor, 4th ed. rev. 1991). With respect to the other jobs, the vocational expert testified that a limitation on reaching overhead would not change the availability of the ticket seller job. Record at 46. She also testified that a third of the attendant jobs would be eliminated with that limitation, *id*. at 47, and that she had made an effort to choose the jobs that would involve the least amount of overhead reaching, *id*. at 51.